UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAJ ABHYANKER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES PATENT & TRADEMARK OFFICE,<br><br>　　　　Defendant. | Case No. 23-cv-00746-AMO<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 35 |

This is a Freedom of Information Act ("FOIA") case. Defendant United States Patent & Trademark Office's ("USPTO") motion for summary judgment was heard before this Court on May 9, 2024. Having carefully considered the arguments advanced at the hearing, together with the parties' papers, as well as the relevant legal authority, the Court hereby **GRANTS** USPTO's motion, for the following reasons. The Court additionally considers the several pending administrative motions to seal.

**I.    BACKGROUND**

Plaintiff Raj Abhyanker is an attorney and principal of the law firm Legalforce RAPC Worldwide, P.C. He initiated a FOIA request and this lawsuit based on a FOIA request to obtain documents related to the USPTO's ethics investigation into his legal practice. *See* ECF 1. Defendant USPTO is the federal agency responsible for granting United States patents and registering trademarks. In doing so, the agency fulfills the mandate of Article I, Section 8, Clause 8, of the Constitution. Under Title 35 U.S.C. § 2(b)(2)(D), Congress vested USPTO with authority to promulgate regulations that "may govern the recognition and conduct of agents, attorneys, or other persons representing applicants or other parties before the Office." In furtherance of its oversight, all practitioners engaged in practice before the USPTO are subject to

the USPTO's disciplinary jurisdiction, and the USPTO's Office of Enrollment and Discipline ("OED") is authorized to investigate possible grounds for discipline. Trujillo Decl. ¶ 39.

### A. USPTO's Disciplinary Investigation of Abhyanker

The disciplinary proceeding against Abhyanker commenced with a complaint filed on December 23, 2019, pursuant to 37 C.F.R. §§ 11.32 and 11.34. *See* Ferman Decl. ¶ 2. A designated hearing officer conducted a hearing in Abhyanker's disciplinary proceeding pursuant to 37 C.F.R §§ 11.39 and 11.44. *Id.* ¶ 3. The hearing concluded on April 20, 2023. *Id.* The matter has been briefed and submitted, and the parties await an initial decision from the hearing officer, pursuant to 37 C.F.R. § 11.54. *Id.*[1]

### B. Abhyanker's FOIA Requests

Abhyanker made two FOIA requests related to USPTO's investigation and decision to initiate disciplinary action against him.

#### 1. First FOIA Request (No. FP-22-00010)

On May 29, 2022, Abhyanker submitted a FOIA request. Trujillo Decl. ¶ 4, Ex. 1. He requested:

> All records containing, describing, pertaining to, or referring to:
>
> A. Memo Authorizing the Investigation against me, Raj Abhyanker, in G3651 believed to authored by USPTO attorney at the Office of Enrollment and Discipline (OED), Ronald Jaicks on or about March 2019.
>
> B. Charging Document against me, Raj Abhyanker, in G3651 believed to be authored by USPTO staff attorney at the OED, Paul Nguyen Ba on or about September 2019-January 2020.

---

[1] After a hearing officer issues an initial decision, either party, or both, may appeal that initial decision to the USPTO Director pursuant to 37 C.F.R. § 11.55. If a hearing officer's initial decision is appealed, the USPTO Director is tasked with reviewing the appeal and issuing a final decision under 37 C.F.R. § 11.56. Either party, or both, may request reconsideration of the USPTO Director's final decision. Under 37 C.F.R. § 11.57(a), "[r]eview of the final decision by the USPTO Director in a disciplinary case may be had by a petition filed in accordance with 35 U.S.C. § 32. Any such petition shall be filed within 30 days after the date of the final decision." The United States District Court for the Eastern District of Virginia reviews the USPTO Director's decisions in USPTO practitioner disciplinary proceedings.

2

*Id.*, Ex. 1. On June 1, 2022, USPTO's FOIA Office sent an acknowledgment letter to Abhyanker and assigned his request tracking number FOIA Request No. FP-22-00010. *Id.* ¶ 5, Ex. 2. The FOIA Office responded to Abhyanker's FOIA request on February 17, 2023, noting that it had identified responsive records, but withheld all records in full pursuant to FOIA Exemptions 5, 6, 7(C), and 7(E). *Id.* ¶ 6, Ex. 3.

Abhyanker submitted an administrative appeal of the USPTO's initial denial of FOIA Request FP-22-00010 on February 23, 2023. Trujillo Decl. ¶ 8, Ex. 4. In this appeal, he narrowed the scope of the request by removing the language "[a]ll records containing, describing, pertaining to, or referring to" from the beginning of the requested records. *Id.*, Ex. 4.

On March 23, 2023, USPTO issued a decision on Abhyanker's FOIA appeal. *Id.* ¶ 9, Ex. 5. The agency reviewed Abhyanker's administrative appeal (A-23-00007) de novo and upheld the denial on modified grounds – it added more exemptions as bases to deny the release of the requested records, including FOIA (5 U.S.C. § 552) Exemption 7(A) and Privacy Act (5 U.S.C. § 552a) Exemptions (d)(5) and (k)(2). *Id.* ¶ 10, Ex. 5. Lastly, the USPTO upheld the original bases for denial, FOIA Exemptions 5, 6, 7(C), and 7(E). *Id.*

### 2.     **Second FOIA Request (No. FP-23-00013)**

On March 23, 2023, with this suit pending, Abhyanker submitted another FOIA request, seeking:

> A. List of exhibits that Paul Nguyen Ba use to "make a package" for his recommendation.
>
> B. Outline of memorialized notes by Nguyen Ba in the USPTO docketing system for this case.
>
> C. The Committee on Discipline's determination of probable cause as described in 37 CFR § 11.32.

Trujillo Decl. ¶ 11, Ex. 6. That same day, the FOIA Office sent an acknowledgement to Abhyanker and assigned it FP-23-00013. *Id.* ¶ 12, Ex. 7.

On August 4, 2023, the FOIA Office responded to FP-23-00013. *Id.* ¶ 13, Ex. 8. The response explained that the FOIA Office had already released the list of exhibits that Abhyanker sought in Part A of his request on June 29, 2023, in a supplemental production in the instant

litigation. *Id.* (citing Bates USPTO000340-000341). The response further explained that, with regard to Parts B and C of the request, responsive records had been identified, but such records were being withheld in full pursuant to FOIA Exemptions 5, 7(A) and Privacy Act Exemptions (d)(5) and (k)(2). *Id.*

Abhyanker submitted an administrative appeal of the USPTO's initial denial of FOIA Request FP-23-00013 on August 8, 2023. *Id.* ¶ 14, Ex. 9. USPTO denied Abyanker's appeal on September 1, 2023. *Id.* ¶ 16, Ex. 11. On December 30, 2023, Abhyanker amended his complaint in this case to include FP-23-00013. ECF 27.

### 3. USPTO's Search for Responsive Documents

Based on the nature of Abhyanker's FOIA requests, the FOIA Office determined that all responsive records would be located within Office of Enrollment and Discipline ("OED"), since his requests sought records related to his disciplinary investigation. Trujillo Decl. ¶ 17. OED is responsible for registering attorneys and agents to practice before the USPTO and for developing and administering the registration examination. *See generally*, 37 C.F.R. Part 11. OED located the two memoranda that Abhyanker sought in FP-22-00010 and provided them to the FOIA Office for processing. *Id.* ¶ 20. Additionally, OED located Nguyen Ba's memorialized notes (which also happened to be contained within the exhibits of the Committee on Discipline memorandum) and the Committee on Discipline probable cause determination, which Abhyanker seeks in FP-23-00013, and provided them to the FOIA Office for processing. *Id.* ¶ 21.

As described above, UPSTO identified the two memoranda that Abhyanker requested in FP-22-00010. The memoranda and their associated exhibits consisted of a total of 1,619 pages of material: "the Ron Jaicks memorandum;" a seven-page memorandum (USPTO000001-000007) and 14 exhibits (USPTO000008-000124) (together, the "Jaicks memo"); and Nguyen Ba's recommendation memorandum to the Committee on Discipline; a 44-page memorandum (USPTO000125- 000168), Rule Violation Chart (USPTO 000169- 000170), Appendices A-C (USPTO 000171- 000339), Exhibit List (USPTO000340- 000341), and 39 Exhibits (USPTO000342- 001619) (together, the "Committee memo"). *See* Trujillo Decl. ¶ 22.

4

As described above, the FOIA Office identified a two-page exhibit list requested in FP-23-00013 (USPTO000340-000341), including Nguyen Ba's memorialized notes and a one-page probable cause determination (USPTO001620). *Id.* ¶ 23.

### 4. Production of Responsive Documents

During the pendency of the lawsuit, the FOIA Office re-reviewed the responsive records and elected to revise its earlier denial decisions. On June 29, 2023, the USPTO provided Abhyanker with 1,566 of the 1,619 pages that were identified as responsive. Trujillo Decl. ¶ 24. All 1,566 pages were released in their entirety and without any redactions. *Id.* Specifically, the FOIA Office released all of the exhibits that corresponded to the Jaicks memo. *Id.* The FOIA Office also released all appendices, the rule violations chart, the exhibit list, and exhibits that corresponded to the Committee memo. *Id.*

Subsequently, on December 1, 2023, USPTO released a redacted version of the Jaicks memo, which had previously been withheld in its entirety. Trujillo Decl. ¶ 25, Ex. 12. On February 5, 2024, USPTO released a redacted version of the one-page probable cause determination, which had previously been withheld in its entirety and further explained that Nguyen Ba's memorialized notes had already been provided in the June 29, 2023 supplemental production. *Id.* ¶ 26, Exs. 14-15.

USPTO continues to withhold the Jaicks memo (7 pages) in part and the Committee memo (44 pages) in full. Trujillo Decl. ¶ 27. USPTO continues to partially withhold the probable cause determination identified in the second FOIA request (1 page). *Id.* Altogether, USPTO continues to withhold, in full or in part, 52 pages.

USPTO withholds portions of the Jaicks memo pursuant to FOIA Exemptions 6, 7(A) and 7(C) and Privacy Act Exemptions (d)(5) and (k2). Trujillo Decl. ¶ 28. USPTO withholds the Committee memo pursuant to the attorney work product privilege and deliberative process privilege recognized under FOIA Exemption 5 and FOIA Exemption 7(A) and Privacy Act Exemptions (d)(5) and (k2). *Id.* USPTO withholds portions of the probable cause determination, specifically, the signature blocks of the committee members, pursuant to Exemptions 6 and 7(C) and Privacy Act Exemptions (d)(5) and (k)(2). *Id.* ¶ 29.

## II. DISCUSSION

There are several motions pending. The Court first addresses the administrative motions to seal before turning to the merits of the USPTO's motion for summary judgment.

### A. Administrative Motions to Seal

Abhyanker moves to file under seal Exhibits 1 through 7 of the First Amended Complaint. ECF 28. There is a strong presumption in favor of public access to judicial records and documents. *Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Accordingly, when considering a sealing request, "a 'strong presumption in favor of access' is the starting point." *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). Parties seeking to seal judicial records relating to motions that are "more than tangentially related to the underlying cause of action" bear the burden of overcoming the presumption with "compelling reasons" that outweigh the general history of access and the public policies favoring disclosure. *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1099 (9th Cir. 2016); *Kamakana*, 447 F.3d at 1178-79.

In addition, in this district, all parties requesting sealing must comply with Civil Local Rule 79-5. That rule requires, among other things, the moving party provide "the reasons for keeping a document under seal, including an explanation of: (i) the legitimate private or public interests that warrant sealing; (ii) the injury that will result if sealing is denied; and (iii) why a less restrictive alternative to sealing is not sufficient." Civ. L.R. 79-5(c)(1). Further, Civil Local Rule 79-5 requires the moving party to provide "evidentiary support from declarations where necessary." Civ. L.R. 79-5(c)(2). And the proposed order must be "narrowly tailored to seal only the sealable material." Civ. L.R. 79-5(c)(3).

Here, the exhibits attached to his First Amended Complaint are more than tangentially related to Plaintiff's claims – they constitute the very substance of his FOIA challenge – and Abhyanker must accordingly provide a compelling reason for sealing. To that end, Abhyanker moves to seal the materials "to protect the privacy and security of certain individuals and facts" named in his filings. ECF 28 at 2. In support of his motion, Abhyanker declares that the materials warrant sealing "because they contain private information about individuals, including third party

1  individuals whose privacy rights should be protected, who have not provided consent, and the
2  disclosure of which might materially harm reputations." *See* Abhyanker Decl. (ECF 29) ¶ 3.[2]
3  This thin, vague explanation falls well short of the "compelling reasons" standard necessary to
4  overcome the presumption in favor of public access. *Ctr. for Auto Safety*, 809 F.3d at 1099. It
5  also falls well short of the explanations and specific tailoring required by Civil Local Rule 79-5.
6  Therefore, the Court **DENIES** the administrative motion to seal.

### B. Motion for Summary Judgment

USPTO moves for summary judgment on all of Abhyanker's FOIA claims, arguing that the agency adequately searched for documents responsive to his requests and that the agency properly withheld or redacted certain documents under applicable FOIA exemptions. The Court sets forth the legal standard for summary judgment before turning to the adequacy of USPTO's search and the application of the several FOIA exemptions.

#### 1. Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

---

[2] During the hearing, the Court discussed with the parties the need to maintain under seal the documents involved in the ongoing USPTO disciplinary matter brought against Abhyanker. That conversation revealed that at least part of Abhyanker's motivation in seeking to seal these materials is to prevent potential personal embarrassment arising from public disclosure of the documents. To the extent Abhyanker seeks to prevent public disclosure of the documents regarding the disciplinary proceedings against him, he has effectively waived any privacy interest by bringing this case in federal district court.

7

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c), (e). The asserted disputed facts must be material – the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48.

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). However, when a non-moving party fails to produce evidence rebutting defendants' showing, then an order for summary adjudication is proper. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment."). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Summary judgment is recognized as a proper avenue for resolving a FOIA claim. *See Sakamoto v. U.S. Envt'l Prot. Agency*, 443 F. Supp. 2d 1182, 1188 (N.D. Cal. 2006). In fact, it "is the procedural vehicle by which nearly all FOIA cases are resolved." *Nat'l Resources Defense Council v. U.S. Dep't of Defense*, 388 F. Supp. 2d 1086, 1094 (C.D. Cal. 2005). In FOIA cases, the usual summary judgment standards apply and "if there are genuine issues of material fact in a FOIA case, the district court should proceed to a bench trial or adversary hearing" and issue findings of fact and conclusions of law. *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 990 (9th Cir. 2016) (citing Fed. R. Civ. P. 52(a)(1)); *see also Cameranesi v. U.S. Dep't of Defense*, 856 F.3d 626, 636 (9th Cir. 2017) (clarifying that courts apply the usual summary judgment standard to FOIA cases). An agency bears the burden of establishing that an exemption applies. *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009).

The government may meet its burden by submitting agency affidavits or declarations that "describe the documents and the justifications for nondisclosure with reasonable specific detail,

8

1 demonstrate that the information withheld logically falls within the claimed exemption, and are
2 not controverted by either contrary evidence in the record nor by evidence of agency bad faith."
3 *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Kamman v. IRS*, 56
4 F.3d 46, 48 (9th Cir. 1995) (noting that government affidavits "may not rely upon conclusory and
5 generalized allegations of exemptions"). "If the affidavits contain reasonably detailed descriptions
6 of the documents and allege facts sufficient to establish an exemption, the district court need look
7 no further" and may grant summary judgment to the government based entirely on the basis of
8 information set forth in the affidavit. *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1135-36 (9th
9 Cir. 2008); *Kamman*, 56 F.3d at 48; *Military Audit Project*, 656 F.3d at 738.

### 2. Adequacy of USPTO's Search for Responsive Records

Abhyanker challenges the adequacy of USPTO's search for records responsive to his two FOIA requests. "FOIA requires an agency responding to a request to 'demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Lahr*, 569 F.3d at 986 (quoting *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)). FOIA requires the agency to show that it "conducted a search reasonably calculated to uncover all relevant documents." *Rojas v. Fed. Aviation Admin.*, 989 F.3d 666, 677 (9th Cir. 2021) (en banc) (quoting *Zemansky*, 767 F.2d at 571). In evaluating the adequacy of the search, the issue "is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Lahr*, 569 F.3d at 987; *see also SafeCard Servs.*, 926 F.2d at 1201 ("[T]he factual question . . . is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant."). A requester cannot challenge the adequacy of a search by "purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

USPTO maintains that its search efforts were reasonable and adequate under law because, plainly, Plaintiff requested specific records regarding the disciplinary case against him, and the USPTO found the documents Plaintiff requested. *See* Trujillo Decl. ¶¶ 17-21.

9

Related to Abhyanker's first FOIA request, No. FP-22-00010, UPSTO identified the two memoranda that Abhyanker sought in FP-22-00010, which consisted of a total of 1,619 pages of material: the Jaicks memo and the Committee memo, along with their associated exhibits. Trujillo Decl. ¶ 22.  Further, the FOIA Office identified a two-page exhibit list, Nguyen Ba's memorialized notes and a one-page probable cause determination.  *Id.* ¶ 23.

Abhyanker's first FOIA requested "[a]ll records containing, describing, pertaining to, or referring to" the two specified documents; however, in his appeal, he narrowed the scope of the request by removing this language.  *Id.* ¶ 8, Ex. 4.  Abhyanker acknowledges that he narrowed the scope of his request in this way and that he sought only these memoranda.

Abhyanker's subsequent FOIA request (No. FP-23-00013) sought the following specific documents: (A) List of exhibits that Paul Nguyen Ba use to "make a package" for his recommendation; (B) Outline of memorialized notes by Nguyen Ba in the USPTO docketing system for this case; and (C) The Committee on Discipline's determination of probable cause as described in 37 C.F.R. § 11.32.  *See* Trujillo Decl. ¶ 11, Ex. 6.  In its response to the FOIA request, the FOIA Office explained that the list of exhibits sought in Part A of his request had already been released to Plaintiff.  *Id.* ¶ 13, Ex. 8. Additionally, OED located Nguyen Ba's memorialized notes (which also happened to be contained within the exhibits of the Committee on Discipline memorandum) and the Committee on Discipline probable cause determination, which Abhyanker seeks in FP-23-00013.  *Id.* ¶ 21.

Given that USPTO found all of the documents Abhyanker requested in his two FOIA requests, there can be no question that USPTO used a search method sufficient to produce the information Abhyanker requested.  *See Lahr*, 569 F.3d at 986 (finding an agency's record search adequate where it used methods which could be reasonably expected to produce the information requested).  Though Abhyanker focuses his argument on the absence of well-defined search terms to demonstrate the extent of USPTO's search, his arguments do not stand up against this fact.  The Court therefore finds that USPTO's searches were reasonable and adequate under the circumstances of this case and controlling law.

### 3. FOIA Exemption 5

The Supreme Court has consistently rejected the idea that a party can "obtain through the FOIA material that is normally privileged [because it] would create an anomaly in that the FOIA could be used to supplement civil discovery." *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 801 (1984). To this end, "Exemption 5 encompasses records 'normally privileged in the civil discovery context.'" *Am. Civil Liberties Union of N. Calif. v. U.S. Dep't of Justice*, 880 F.3d 473, 483 (9th Cir. 2018) (quoting *Nat. Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)). FOIA Exemption 5 also withholds from disclosure "inter-agency or intra-agency memorandums or letters" that are not discoverable in litigation. 5 U.S.C. § 552(b)(5).

USPTO argues that the Committee memo falls within the bounds of Exemption 5 because it is privileged as (1) attorney work product and (2) product of the agency's deliberative process.

#### a. Work Product

"To qualify for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'" *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011).

Here, the Committee memo was prepared by Nguyen-Ba, the OED attorney who was assigned to investigate misconduct allegations against Abhyanker. Trujillo Decl. ¶ 31. OED's Committee on Discipline considered allegations that Abhyanker, a registered practitioner before USPTO, violated various provisions of the USPTO Code of Professional Responsibility and/or the USPTO Rules of Professional Conduct. *Id.* The Committee memo is dated September 25, 2019, and consists of Nguyen-Ba's legal analysis and recommendations regarding Abhyanker's alleged misconduct. *Id.* ¶ 32. Nguyen-Ba presented the memo as part of the presentation of evidence for the Committee on Discipline to consider in determining whether probable cause existed to bring charges under 37 C.F.R. § 11.32 against Abhyanker; the Committee's probable cause findings and recommendations were then forwarded to the OED Director. *See also* Trujillo Decl. ¶ 32. The OED Director reviewed these findings in deciding whether to file a complaint against the practitioner. *Id.* Given this context, it is clear that Nguyen-Ba prepared the Committee memo in anticipation of litigation. *See Richey*, 632 F.3d at 567.

11

1    Abhyanker argues that the attorney work product privilege does not apply here because the
2    materials sought were prepared in the routine work of the agency, not in anticipation for litigation.
3    He fails to present any evidence to this effect. Moreover, his contention is directly contradicted by
4    the record evidence presented by the USPTO, which shows that it was prepared in contemplation
5    of litigation that the agency then initiated.

6    On this same point, the administrative law judge presiding over Abhyanker's disciplinary
7    proceeding, Administrative Law Judge J. Jeremiah Mahoney, denied Plaintiff's request to obtain
8    the Committee memo during discovery. Trujillo Decl. ¶ 34. In a May 22, 2022 Order, the judge
9    ruled that the Committee memo is protected by the attorney work product privilege. *Id.* & Ex. 15.

10   In sum, because the Committee memo is attorney work product, it is properly exempted
11   from disclosure under FOIA Exemption 5.

### b. Deliberative Process

Exemption 5 also protects from disclosure documents created as part of an agencies' deliberative process, which encompasses "inter-agency or intra-agency" documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). The deliberative process privilege is intended to "enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government" and "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Klamath*, 532 U.S. at 8-9 (internal citations omitted). The purpose of the deliberative process privilege "is to prevent injury to the quality of agency decisions." *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997).

The deliberative process privilege "shields from disclosure documents that are both 'predecisional' and part of the agency's 'deliberative process.'" *Kowack v. U.S. Forest Serv.*, 766 F.3d 1130, 1135 (9th Cir. 2014); *see also Maricopa Audubon Soc'y*, 108 F.3d at 1093. Predecisional documents are "'prepared in order to assist an agency decisionmaker in arriving at

his decision,'" *Assembly of State of Cal. v. U.S. Dep't of Com.*, 968 F.2d 916, 921 (9th Cir. 1992) (quoting *Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 184 (1975)), and may include "recommendations [and] draft documents," *Assembly of the State of Cal.*, 968 F.2d at 920. Predecisional materials are "deliberative" if "disclosure of the materials would expose [the] agency's decisionmaking process in such a way as to discourage candid discussions within the agency and thereby undermine the agency's ability to perform its functions." *Kowack*, 766 F.3d at 1135.

Here, the Committee memo is predecisional because it does not constitute OED's final decision regarding discipline (i.e., OED Director's complaint against Plaintiff) and instead represents the investigating attorney's recommendation to the Committee, which is responsible for reviewing the evidence and providing a probable cause finding to the OED Director. *See* Trujillo Decl. ¶ 37. To disclose this information would reveal internal deliberations between the OED Director and the Committee, namely, internal analysis, impressions, and recommendations. *Id.* ¶ 38. Disclosure would jeopardize the candid and comprehensive discussions that are essential for efficient and effective agency decision-making regarding the discipline of practitioners. *See Kowack*, 766 F.3d at 1135. The interests of OED attorneys in presenting their analysis and recommendations to the Committee without fearing that these sensitive internal communications will be released publicly remains a compelling interest supporting withholding of such internal communications. *Id.*

Therefore, the Court finds that USPTO properly withheld the Committee memo under Exemption 5 because it is both attorney work product and protected by the deliberative process privilege.

### 4. FOIA Exemption 7(A)

USPTO asserts Exemption 7(A) covers the redacted portions of the Jaicks memo and the Committee memo. FOIA Exemption 7(A) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information [ ] could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The threshold test under Exemption 7(a) is whether the

documents were compiled for law enforcement purposes, which requires an examination of whether the agency serves a "law enforcement function." *Church of Scientology Int'l v. IRS*, 995 F.2d 916, 919 (9th Cir. 1993). The distinction between civil and criminal law enforcement proceedings does not alter this analysis. *See Tax Analysts v. IRS*, 294 F.3d 71 (D.C. Cir. 2002) ("'law enforcement purposes' under Exemption 7 includes both civil and criminal matters within its scope . . . FOIA makes no distinction between agencies whose principal function is criminal law enforcement and agencies with both law enforcement and administrative functions.") (citing *Pratt v. Webster*, 673 F.2d 408, 416 (D.C. Cir. 1982)).

The documents in question here were compiled and/or created in furtherance of the USPTO's mission: to enforce the disciplinary rules pursuant to its authorities under 35 U.S.C. § 2(b)(2)(D), which authorizes the USPTO to "govern the recognition and conduct of agents, attorneys, or other persons representing applicants or other parties before the Office." *See* Trujillo Decl. ¶ 41. Abhyanker's FOIA requests seek records regarding OED's investigation into his alleged misconduct. *Id.* While the investigative phase of the attorney discipline enforcement proceeding has ended, the proceeding is still active because the parties are awaiting the decision from the administrative law judge, and once that decision is issued, the parties have various administrative appeal options and federal court options. *Id.*

The Jaicks memo concerns OED's initial findings, impressions, and opinions regarding whether OED should proceed in opening a disciplinary case against Abhyanker. Trujillo Decl. ¶ 42. Disclosure of portions of the Jaicks memo withheld under Exemption 7(A) would impede the ongoing disciplinary proceedings. *See* 5 U.S.C. § 552(b)(7)(A).

USPTO similarly contends that Exemption 7(A) applies to the Committee memo. Mot. at 15 (citing Trujillo Decl. ¶ 43). The memo was drafted at the conclusion of the investigation into Abhyanker by an attorney and reflects the strengths and weaknesses of whether charges should be brought and which charges should be brought against him. *Id.* To provide this memo to Abhyanker by way of a FOIA request would prejudice the Government's ongoing case. The Court accordingly agrees that the redacted memo and the withheld memo fall within the law enforcement protection afforded by Exemption 7(A).

### 5. FOIA Exemption 6 and 7(C) Redactions

USPTO advances that Exemption 6, in conjunction with Exemption 7(C), applies to a small portion of the first page of the Jaicks memo that contains information about OED's disciplinary investigations of individuals other than Abhyanker. Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Under Exemption 6, the concept of privacy not only encompasses that which is inherently private, but also includes an "individual's control of information concerning his or her person." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989). In order to determine whether Exemption 6 protects against disclosure, courts require that agencies engage in a multi-part process. First, a court must determine whether the information at issue is contained within a personnel, medical, or "similar" file. 5 U.S.C. § 552(b)(6). Second, a court must determine whether there is a significant privacy interest in the requested information. *See Multi Ag Media LLC. v. USDA*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (superseded on other grounds by 7 U.S.C. § 8791(b)(2)). Third, the court must evaluate the requester's asserted FOIA public interest in disclosure. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 160 (2004). Finally, if there is a significant privacy interest in nondisclosure and a FOIA public interest in disclosure, the court must balance those competing interests to determine whether disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In particular, Exemption 6 states that FOIA does not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Because Exemption 6 speaks of an "unwarranted" invasion of personal privacy, "a court must balance the public interest in disclosure against the interest Congress intended the [e]xemption to protect." *U.S. Dep't of Def. v. Fed. Labor Relations Auth. (FLRA)*, 510 U.S. 487, 495 (1994).

By slight contrast, Exemption 7(C) exempts disclosure of information based on privacy concerns by permitting an agency to withhold from disclosure information that is "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement

15

records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Here, USPTO avers that a combination of the privacy interests delineated in Exemption 6 and Exemption 7(C) applies to a small portion of the first page of the Jaicks memo (USPTO000002) which contained information about OED's disciplinary investigations of individuals other than Abhyanker. Trujillo Decl. ¶ 46. Using the same privacy-based combination, USPTO avers that Exemption 6 and Exemption 7(C) apply to the names and signatures of the members of the Committee on Discipline. *Id.* ¶ 47. The Court concurs. Both of these groups of redactions are similar to personnel or medical files in that their disclosure would impair the privacy interests of others facing disciplinary investigations separate from Abhyanker as well as the privacy interests of members of the Committee on Discipline. *See, e.g.*, *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 765 (1989) ("[D]isclosure of records regarding private citizens, identifiable by name, is not what the framers of FOIA had in mind.").

The privacy interests of these groups are significant, particularly to prevent embarrassment of irrelevant parties and harassment of members of the Committee on Discipline. *See Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1026-27 (9th Cir. 2008) (concluding that forest service employees have a valid privacy concern, including due to harassment or embarrassment or contact by the plaintiff or media). The application of this exemption is appropriate because the Committee on Discipline members are like grand jurors in that they review evidence presented to them and make determination about whether there is probable cause to charge individuals. Trujillo Decl. ¶ 47. Similar to grand jurors, they have a strong privacy interest in keeping their identities hidden so as to avoid harassment or threats to their safety. *Id.*

In response to both redactions, Abhyanker states only "that the public interest in disclosure significantly outweighs the privacy concerns cited, especially given the alleged malfeasance." Opp. at 13. His stated FOIA interest in disclosure accordingly warrants little weight, particularly where he has obtained the substantive portions of the documents without those relatively minimal redactions.

Finally, there exists only minimal, if any, public interest in the information withheld under Exemption 7(C), because disclosing the redactions in the Jaicks memo and the names redacted from probable cause determination would not significantly increase "public understanding of the operations and activities of the Government." *See FLRA*, 510 U.S. at 495.

The Court finds that USPTO properly invoked Exemptions 6 and 7(C) and the minimal redactions of names in the Jaicks memo and the probable cause determination were validly withheld.

### 6.    "Reasonably Segregable" Non-Exempt Information

Title 5 U.S.C. § 552(b) provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." A district court is required to make findings about segregability when an entire document is withheld. *Wiener v. F.B.I.*, 943 F.2d 972, 988 (9th Cir. 1991).

The USPTO conducted a line-by-line review of all responsive material to identify and release information that was either non-exempt or that qualified for discretionary waiver. Trujillo Dec. ¶ 58. On June 29, 2023, USPTO released all attachments and exhibits to both the Jaicks memo and the Committee memo. *Id.* On December 1, 2023, USPTO provided another supplemental release to Abhyanker, this time providing the majority of the Jaicks memo to him, only redacting portions of memorandum pages USPTO000001, 000002, 000006, and 00007. *Id.* On February 5, 2024, the USPTO provided its last supplemental production to Abhyanker, releasing the entire probable cause determination except for the identity of the members of the Committee on Discipline. *Id.* USPTO has provided thorough explanations for redacting or withholding the materials not fully released to Abhyanker, including asserting several privileges. *See, e.g.*, Trujillo Decl. ¶¶ 53-56. The Court finds that USPTO satisfies the standard for withholding the Committee memo in full, particularly because Abhyanker presents no countervailing evidence that USPTO failed to present reasonably segregable portions of the applicable record. USPTO is entitled to summary judgment on this issue as well.

//

//

### III. CONCLUSION

In sum, USPTO demonstrates the adequacy of its search for the materials requested by Abhyanker, relevant FOIA exemptions apply to the materials withheld, and USPTO met its burden to show that it produced all reasonably segregable portions of the applicable record. Abhyanker fails to proffer any countervailing evidence. For the foregoing reasons, the Court **GRANTS** USPTO's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: August 19, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**